**JAHNCKE SERVICE, INCORPORATED,**
Plaintiff,

v.

**OKC CORP., Defendant.**
Civ. A. No. 3728.

United States District Court
D. Delaware.
July 1, 1969.

James M. Tunnell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Henry P. Sailer, Covington & Burling, Washington, D. C., of counsel, for plaintiff.

Rodney M. Layton, Richards, Layton & Finger, Wilmington, Del., and John F.

Arning, Sullivan & Cromwell, New York City, of counsel, for defendant.

## OPINION

LATCHUM, District Judge.

This is a civil antitrust suit brought by Jahncke Service, Incorporated (Jahncke) against OKC Corp. (OKC). The complaint seeks (a) to enjoin OKC from carrying out a plan to acquire control of Jahncke through the acquisition of its common stock by way of a tender offer to Jahncke's stockholders and (b) to recover treble damages. Jahncke bases its action on Section 7 of the Clayton Act, 15 U.S.C. § 18, alleging that an OKC take-over of Jahncke would substantially lessen competition or tend to create a monopoly in restraint of commerce in the production and sale of marine shell, portland cement, ready-mixed cement and concrete pipe in the New Orleans metropolitan area. Jurisdiction is based on 28 U.S.C. §§ 1331(a), 1337 and 15 U.S.C. §§ 15, 22, 26.

The case is presently before the court on OKC's motion to transfer the action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of Louisiana, New Orleans Division.

The transfer of an action under § 1404(a) to another district "where it might have been brought" is to be judged by the standard of whether it is "for the convenience of parties, witnesses, in the interest of justice." Since the parties agree, and the Court concurs, that this action could have been brought in the proposed transferee district,[1] I turn to the circumstances of the case in order to determine whether the criteria are met which would cause this Court to exercise its discretionary power to transfer.

▮ *Convenience of Parties.* The record before me indicates that Jahncke is a Louisiana corporation which oper-

---

1. The proposed transfer district has jurisdiction over the subject matter, venue is proper there and OKC is amenable to process issuing out of the transferee court since it has a plant and does business in Louisiana.

ates exclusively within the New Orleans area where its plant and principal place of business are located. OKC, although a Delaware corporation, maintains its principal place of business in Dallas, Texas and has plants, personnel and officers only in Louisiana, Oklahoma and Texas. OKC's only connection with Delaware is that it is incorporated and maintains a statutory office here and has chosen this court as the forum for this lawsuit. But the facts that Delaware is plaintiff's choice of forum and defendant's state of incorporation, standing alone, "do not control the theatre of litigation" under the criteria set forth in § 1404(a). Glickenhaus v. Lytton Financial Corp., 205 F.Supp. 102, 106 (D.Del.1962). It appears quite obvious that as far as the parties, their officers and personnel are concerned a transfer of the case to the Eastern District of Louisiana would serve the convenience of all because that district is much closer to their bases of operation than is Delaware.

■ *Convenience of Witnesses and Access to Proof.* It also appears that nearly all the witnesses in this case will come from the New Orleans area or from Texas and possibly Oklahoma. On the other hand, no witnesses will come from Delaware or in fact from the eastern seaboard of the United States. Furthermore, those documents that will undoubtedly be relied upon in any trial are located either in Louisiana or Texas. No documents are to be found in Delaware. Since the market involved in the alleged violation of the Clayton Act is the New Orleans market unquestionably New Orleans witnesses, who are unrelated to the parties, may be required to testify, and if unrelated and unwilling, they will be available and amenable to compulsory process which is an important factor to be considered. Thus, I conclude that a transfer is indicated from the standpoint of the convenience of witnesses and access of proof.

■ *Interest of Justice.* An even more important reason appears for requiring the transfer. There is already a related suit pending in the Eastern District of Louisiana which raises the same antitrust issue existing in this case.[2] Both the New Orleans case and the one here involve litigation growing out of the efforts of OKC to gain control of Jahncke and Jahncke's resistance of those efforts. From the documents filed in the New Orleans action, it appears that in an effort to forestall OKC's take-over, Jahncke negotiated with J. Ray McDermott & Co., Inc. (McDermott) to acquire all the stock of Associated Pipeline Contractors Inc., a wholly owned subsidiary of McDermott. In return McDermott secured and exercised a warrant for a substantial block of Jahncke's stock with the result that McDermott ended up with more than fifty per cent of the outstanding stock, thereby controlling Jahncke and frustrating OKC's attempt to gain control through the acquisition of Jahncke's stock. The New Orleans suit was then brought by a group of Jahncke stockholders who were sympathetic to OKC's offer. The plaintiffs there sought to enjoin Jahncke, McDermott and certain officers and directors of each from voting the newly issued shares acquired by McDermott, claiming that the issuance, transfer and exercise of the warrant constituted a breach of fiduciary duty on the part of Jahncke's management and that acts of the defendants resulted in the violation of the Securities and Exchange Act of 1934. OKC was not a party to the New Orleans suit but the parties apparently agree that the plaintiffs were at least in part acting in support of, if not directly on behalf of, OKC's take-over efforts. In defense of the New Orleans suit, Jahncke and McDermott filed a counter-claim and cross-moved for a preliminary injunction charging the plaintiffs with various violations of the securities laws and also claiming that the acquisition of Jahncke's stock by Oklahoma

---

2. Charles R. Stevens et al. v. Jahncke Service, Incorporated et al., C.A. No. 69–732.

Land and Cattle Company, also a plaintiff and an alleged "stalking horse" for OKC, and the solicitation of proxies by the plaintiffs, violated § 7 of the Clayton Act as a part of a combination by OKC to take over control of Jahncke and substantially lessen competition. After a five day hearing on plaintiffs' motion for preliminary injunction, the New Orleans court enjoined the voting of the stock acquired by McDermott. While the court did not speak of the antitrust issue of the case, it was present although overshadowed by the other claims pressed at the hearing.

Be that as it may, it is clear that the present suit is simply another round in the continuing battle for control of Jahncke. While the present complaint is much more elaborate and definite as to the antitrust charges and sues OKC directly, it is yet but an extension of, and an elaboration upon, the litigation pending in New Orleans.

In view of the integral relationship of the two suits, in that each raises an identical issue, viz. the violation of the Clayton Act, it would lead "to the wastefulness of time, energy and money that § 1404(a) was designed to prevent," if these two cases should proceed simultaneously in different District Courts. Continental Grain Co. v. Barge, FBL–585, 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960). A transfer of this case to the proposed transferee court for consolidation with the action already pending there will unquestionably promote greater judicial efficiency since a single court will be able to handle both cases which grow out of essentially a single dispute over control of Jahncke.

The plaintiff at argument conceded that it would be more convenient for the parties and witnesses to try the case in New Orleans. Plaintiff's main thrust, however, in opposing transfer is based on the assumption the antitrust phase of the litigation could be more promptly handled here than in the transferee court because of calendar conditions. The argument runs that any prolonged delay in finally determining the matter will result in ruin of Jahncke in its present form and such a delay is possible in the transferee court.[3] Assuming counsel's representation as to the calendar condition of the New Orleans Court is accurate, it might be possible to bring the matter on here more promptly for final hearing provided both parties cooperated and the matter for determination could be rather simply proved with a minimal amount of discovery. But the defendant, as might be expected, has somewhat different views about the complexity of the case and will not concede that the matter could be handled here any more expeditiously than in the transferee court. Plaintiff's argument against transfer deals basically with imponderables which so much depend upon future action of the parties and developments as the case progresses. I do not believe such imponderables should be grounds for refusing transfer particularly when the criteria of § 1404(a) are so clearly met in this case.

In my opinion the factors of convenience of parties and witnesses and the interest of justice discussed herein far *outweigh any expectation of a prompt trial in Delaware envisioned by the plaintiff.*

Under these circumstances, OKC's motion to transfer will be granted.

---

3. It should be noted however that the Louisiana District Court promptly held a five day hearing on plaintiff's motion for a preliminary injunction on rather short notice. This to me indicates rather prompt, efficient and effectual judicial administration.